UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK MURPHY,

                              Plaintiff,

           v.

L.A. SPAULDING, *et al.*,

                              Defendants.

No. 20-CV-9013 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Mark Murphy
Altona, NY
*Pro Se Plaintiff*

Haylei Peart, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Mark Murphy ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to 42

U.S.C. § 1983, against Assistant Warden La Fonda Spaulding ("Spaulding" or "Defendant

Spaulding"), Sergeant ("Sgt.") Michael Carozza ("Carozza" or "Defendant Carozza"),

Corrections Officer ("C.O.") Richard Iaboni ("Iaboni" or "Defendant Iaboni"), and C.O.

Christopher Schmitt ("Schmitt" or "Defendant Schmitt"; collectively, "Defendants"), alleging

that Defendants violated his constitutional rights by failing to protect him from and properly care

for a rash that Plaintiff developed after another inmate threw a liquid substance at him.  (Compl.

(Dkt. No. 2).)  Before the Court is Defendants' Motion to Dismiss the Complaint (the "Motion")

filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Not. of Mot. (Dkt. No. 29).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Complaint and Amended Complaint and are assumed true for the purpose of resolving the instant Motion.[1]

The events giving rise to this Action took place while Plaintiff was in custody at the Westchester County Jail.  (Am. Compl. 4 (Dkt. No. 9).)[2]  Plaintiff alleges that on September 23, 2020, Sgt. Carozza, C.O. Iaboni, and C.O. Schmitt were "attempting to coax an unidentified inmate out of his cell to escort him to suicide watch."  (Compl. 4.)  The inmate "refused to allow them to handcuff him from behind[,] and in an effort to expedite his transfer[,] the[y] [hand]cuffed him in the front . . . ."  (*Id.*)  According to the Complaint, the officers "proceeded to escort [the inmate] off the unit" "without pat frisking him [first]" as required by procedure.  (*Id.*)  "As [the officers] were escorting [the] prisoner down the gallery[,] the prisoner broke free from [the] officers[,] reached down his pants[,] pulled out a shampoo bottle[,] and splashed [Plaintiff] in [his] face and upper body with a concoction of feces, urine, sour milk, semen, and caustic chemical[s]."  (Am. Compl. 4.)  According to Plaintiff, "[h]ad this inmate been properly

---

[1] Although "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)), "[g]iven Plaintiff's pro se status . . . the Court will consider both the [] Amended Complaint and [] Complaint together, *Guy v. MTA New York City Transit*, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017) (considering the pro se plaintiff's third amended complaint and first amended complaint together where the third amended complaint omitted facts pled in the first amended complaint).

[2] When citing to the Complaint or Amended Complaint, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

restrained according to D.O.C. training and [p]roperly pat frisked . . . he would not have been able to sneak this container out of his cell." (Compl. 5–6.)

After securing the prisoner, Sgt. Carozza, C.O. Iaboni, and C.O. Schmitt asked Plaintiff if he wanted to seek medical attention. (*Id.* at 4.) Plaintiff replied that he "merely wished to re-shower to wash the substance away." (*Id.*) Plaintiff "sought medical attention the next day" for a "rash that [he] had developed on [his] left arm and right facial area around his cheek." (*Id.*) Plaintiff was given "[Benadryl] and Cortisone [c]ream" for his rash. (*Id.*)

On September 24, 2020, Plaintiff filed Grievance #20-0303, in which he complained about "the manner in which this inmate was placed in mechanical restraints, and subsequently removed from his cell without having been patted down or frisked according to N.Y. State Administrative Directions, [] Westchester County D.O.C. Policy & Procedure[,] and N.Y. State Correctional Law that calls for the safety and security of those [e]ntrusted to its care." (*Id.* at 4–5.) On September 29, 2020, the grievance coordinator denied Plaintiff's grievance, writing: "As no policies were violated and you were splashed inadvertently your grievance is denied on merits." (Dkt. No. 29-3.)[3] On October 2, 2020, Defendant Spaulding overruled the decision of the grievance coordinator by partially accepting and partially denying Plaintiff's grievance. (Compl. 8) Specifically, Defendant Spaulding wrote:

---

[3] "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted). Because the exhibits attached to Defendants' Motion, (Dkt. Nos 29-2, 29-3), are consistent with the allegations in the Complaint and the document attached to the Complaint, (Dkt. No. 2), and the Amended Complaint, (Dkt. No. 9), the Court will consider the documents attached to Defendants' Motion.

> There is nothing in [the New York State Commission of Correction
> ("N.Y.S.C.O.C.")] Minimum Standards or [the Westchester County Department
> of Corrections ("W.C.D.C")] Policy and Procedures that dictates how inmates are
> handcuffed for escorts within the facility. . . .  As such, I am denying this part of
> your grievance and not giving credence to your claim that proper protocols
> weren't followed because the inmate was handcuffed in the front. . . . I did
> determine[,] however[,] that proper protocols were not totally followed in that the
> inmate should have been pat frisk searched for weapons/contraband prior to being
> escorted down the tier in handcuffs. . . . As such, I am accepting the part of your
> grievance that asks for proper protocols and procedures to be followed when
> dealing with inmates being escorted in cuffs.

(*Id.*)  Defendant Spaulding also noted that "the staff involved [were] re-educated on the

importance of searching an inmate prior to escorting him through the facility with cuffs on."

(*Id.*)

Liberally construed, Plaintiff alleges that Defendants violated his Eighth Amendment

rights.  Plaintiff also alleges a state law claim for negligence.  Specifically, Plaintiff claims that

Defendants Carozza, Iaboni, and Schmitt failed to protect him from the other prisoner's attack,

were negligent in failing to search the other prisoner, and were deliberately indifferent to

Plaintiff's medical needs.  (*See* Am. Compl. 4.)  Plaintiff also claims that Defendant Spaulding

failed to protect him by "fostering an atmosphere that ma[de] it possible for such an incident to

happen."  (*Id.*)  Plaintiff claims that as a result of Defendants' alleged failures, the right side of

his face and left arm broke out in a rash.  (Compl. 5.)  Plaintiff sues all Defendants in their

official and individual capacities.  (*Id.* at 1.)  Plaintiff also suffered "mental" injuries from

"knowing that it was feces, urine, and another man's semen" in the substance, which "could

carry a disease."  (Am. Compl. 5.)  Plaintiff also seeks a total of $1,000,000 in damages—

$250,000 from each Defendant.  (*Id.*)

### B.  Procedural History

Plaintiff filed his Complaint on October 27, 2020.  (Dkt. No. 2.)  On December 2, 2020, then-Chief Judge McMahon granted Plaintiff leave to proceed in forma pauperis.  (Dkt. No. 4.) On December 7, 2020, the Court granted Plaintiff leave to amend his Complaint to detail his claims.  (Dkt. No. 5.)  On January 13, 2021, Plaintiff filed an Amended Complaint.  (Dkt. No. 9.)[4]  On July 7, 2021, after seeking and receiving several extensions, Defendants filed their Motion To Dismiss and accompanying papers.  (*See* Not. of Mot.; Decl. in Supp. of Defs.' Mot. To Dismiss (Dkt. No. 29-1); Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 29-4).)  On August 13, 2021, Plaintiff requested to postpone the litigation until after he is released from custody, which Plaintiff estimated to occur in February 2022.  (Dkt. No. 30.) On September 1, 2021, the Court denied Plaintiff's request.  (Dkt. No. 31.)  To date, Plaintiff has failed to respond to Defendants' Motion.

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

---

[4]  The Court notes that Plaintiff's Amended Complaint essentially repeats the allegations in the Complaint.  (*Compare* Compl. *with* Am. Compl.); *see also* Order (Dkt. No. 5) 6–7 (ordering Plaintiff to provide additional detail in his Amended Complaint).)  In light of Plaintiff's pro se status, the Court will consider the Complaint and Amended Complaint together.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, as disscucsed above, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F.*, 199 F.3d at 107 (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B.  Analysis

1.  Eleventh Amendment

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration and quotation marks omitted).  "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983."  *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).  "The immunity recognized by the Eleventh Amendment extends beyond the states

themselves to state agents and state instrumentalities that are, effectively, arms of a state."

*Gollomp*, 568 F.3d at 366 (alteration omitted).  The Eleventh Amendment therefore also bars the

claims for damages against individual defendants in their official capacities.  *See Kentucky v.*

*Graham*, 473 U.S. 159, 166–67 (1985); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529

(2d Cir. 1993) ("To the extent that a state official is sued for damages in his [or her] official

capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke

the Eleventh Amendment immunity belonging to the state."); *Leon v. Rockland Psychiatric Ctr.*,

232 F. Supp. 3d 420, 436 (S.D.N.Y. 2017); *Percibali v. New York*, No. 09-CV-6933, 2010 WL

3958731, at *4 (S.D.N.Y. Sept. 28, 2010).  Thus, all claims filed against Defendants in their

official capacities are dismissed.

### 2.  Personal Involvement

With respect to Plaintiff's remaining claims against Defendants in their individual

capacities, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit

brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* at 139 (italics and quotation marks omitted).  In other words, "[b]ecause vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at

676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Defendants argue that Plaintiff failed to allege Defendant Spaulding's personal involvement because she was "not even present when the incident occurred . . . [and] her only connection to the matter at bar is the fact that she is employed as Assistant Warden at the [Westchester County] Jail."  (Defs.' Mem. 15–16.)  However, "by alleging [that Defendant Spaulding] received [Plaintiff's] grievance *and [responded to] it in writing*—and by attaching the purported written [response] to the complaint—[P]laintiff[] ha[s] plausibly alleged [Defendant Spaulding's] personal involvement here."  *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (emphasis in original); *see also Harris v. Westchester Cnty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *10 (S.D.N.Y. Apr. 3, 2008) (denying motion to dismiss as to prison supervisor who received and acted upon plaintiff's grievances).  Thus, Plaintiff has alleged Defendant Spaulding's personal involvement.

Defendants also argue that "Plaintiff has failed to allege any individual action by Defendants Carozza, Iaboni, or Schmitt" and thus any claims in their individual capacities "should be dismissed."  (Defs.' Mem. 16.)  The Court disagrees.  Plaintiff alleges that Defendants Carozza, Iaboni, and Schmitt "attempt[ed] to coax [the] unidentified inmate out of his cell to escort him to suicide watch," placed him in handcuffs from the front "in an effort to expedite his transfer" after he "refused to allow them to handcuff him from behind," failed to pat frisk him before escorting him down the gallery, secured the unnamed prisoner after he broke free, and asked Plaintiff if he wanted medical attention after the unidentified inmate splashed an

unknown substance on Plaintiff.  (Compl. 4; *see also* Am. Compl. 4.)  Plaintiff has clearly

alleged that Defendants Carozza, Iaboni, and Schmitt "participated directly in the alleged

constitutional violation."  *Grullon*, 720 F.3d at 139 (quotation marks omitted).  Plaintiff's claims

against Defendants Carozza, Iaboni, and Schmitt in their individual capacities therefore cannot

be dismissed for lack of personal involvement.

### 3.  Eighth Amendment Claims

#### a.  Failure to Protect

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison

officials to "take reasonable measures to guarantee the safety of inmates in their custody."

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (same).  Specifically, "[p]rison officials have a duty to protect

prisoners from violence at the hands of other inmates since being violently assaulted in prison is

'simply not part of the penalty that criminal offenders pay for their offenses against society.'"

*Lee v. Artuz*, No. 96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting

*Farmer*, 511 U.S. at 834).  However, "not . . . every injury suffered by one prisoner at the hands

of another . . . translates into constitutional liability for prison officials responsible for the

victim's safety."  *Farmer*, 511 U.S. at 834.  Instead, "the prisoner must allege actions or

omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."

*Hayes*, 84 F.3d at 620; *see also Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8

(N.D.N.Y. Aug. 19, 2014) ("Prison officials are liable under the Eighth Amendment for harm

incurred by an inmate if they act with deliberate indifference to the inmate's safety.").

To satisfy the deliberate indifference standard, a plaintiff must allege that (1) "he is

incarcerated under conditions posing a substantial risk of serious harm" and (2) "the defendant

prison officials possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834). The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes*, 84 F.3d at 620. "Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.* As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Price*, 2014 WL 4146276, at *8 (explaining that to establish deliberate indifference, "a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety"). A defendant's knowledge can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quotation marks omitted)).

Regarding the first prong, Plaintiff alleges that he was incarcerated under conditions pointing to a substantial risk of serious harm. Specifically, Plaintiff alleges that Defendants Carozza, Iaboni, and Schmitt failed to follow proper protocols by placing the unidentified inmate in handcuffs in the front of his body instead of the back and failing to pat frisk the inmate prior to escorting him out of his cell. (*See* Compl. 4; Am. Compl. 4.) According to Defendant

11

Spaulding, "[t]here is nothing in [N.Y.]S.C.O.C. Minimum Standards or W.C.D.O.C. Policy and Procedures that dictates how inmates are handcuffed for escorts within the facility." (Dkt. No. 29-3.)  However, she "did determine that proper protocols were not totally followed in that the inmate should have been pat frisk searched for weapons/contraband prior to being escorted in cuffs."  (*Id.*)  Courts in this district have assumed that pro se plaintiffs alleged a substantial risk of serious harm existed where correctional officers failed to follow protocols for inmate safety. *See Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) (holding that the plaintiff plausibly alleged a substantial risk of serious harm where the correctional officer "failed to comply with the morning cell clean-up protocol by not ensuring that every cell was closed," which allegedly left the plaintiff vulnerable to another inmate's attack (quotation marks omitted)); *Blake v. Kelly*, No. 12-CV-7245, 2014 WL 4230889, at *2, *5–6 (S.D.N.Y. Aug. 26, 2014) (denying the defendants' motion to dismiss the plaintiff's deliberate indifference claim where overcrowding of holding cell created a "den of violence"); *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08-CV-4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (finding that the plaintiff had "alleged facts from which a court could reasonably infer a substantial risk of serious harm" where the defendant's "failure to station an officer at the dorm area contributed to a risk of harm to inmates at the facility").  The Court is therefore willing to assume, given the early stage of this Action, that Plaintiff has plausibly alleged that Defendants' actions may have put Plaintiff at a substantial risk of serious harm.

Plaintiff does not, however, allege facts that plausibly suggest that Defendants had knowledge of an excessive risk to Plaintiff's safety under the second prong of a failure to protect claim.  "As a general matter, surprise attacks do not suggest deliberate indifference by a corrections officer." *Jenkins v. Officer S (Downstate)*, No. 19-CV-10728, 2021 WL 4392611, at

*4 (S.D.N.Y. Sept. 24, 2021); *see also Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at
*8 (S.D.N.Y. June 11, 2021) ("It is well-established that prison officials cannot be deliberately
indifferent to a surprise attack."); *Carrasco v. Annucci*, No. 17-CV-9643, 2020 WL 5038561, at
*3 (S.D.N.Y. Aug. 26, 2020) ("Courts routinely deny deliberate indifference claims based upon
surprise attacks." (citation omitted)); *Fernandez*, 2010 WL 1222017, at *4 (noting the absence of
a prior altercation with or threats from the inmate who attacked the plaintiff).  Plaintiff does not
allege any facts to suggest that the unidentified inmate's actions were anything but a surprise
attack.

  At most, Plaintiff's claims suggest that Defendants were negligent in failing to pat frisk
the unidentified inmate, or that Defendants were negligent in not employing the additional
precaution of placing the inmate in handcuffs behind his body instead of in front.  *See Bussey v.
Miller*, No. 16-CV-82, 2020 WL 4719957, at *11 (W.D.N.Y. July 1, 2020) (noting that "the
failure to institute additional security precautions constitutes, at most, negligence"), *report and
recommendation adopted*, 2020 WL 4705208 (W.D.N.Y. Aug. 12, 2020).  And, "[u]nder the
second prong of a failure to protect claim . . . a plaintiff must allege a culpable state of mind—
'mere negligence will not suffice.'"  *Rennalls*, 2015 WL 5730332, at *5 (quoting *Hayes*, 84 F.3d
at 620); *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (explaining that
deliberate indifference "is a mental state equivalent to subjective recklessness" and that
"recklessness entails more than mere negligence; the risk of harm must be substantial and the
official's actions more than merely negligent").  Plaintiff has not alleged that Defendants
"actually knew of and disregarded an excessive risk of harm to [his] safety."  *Price*, 2014 WL
4146276, at *8.  That is, Plaintiff has not alleged that Defendants knew the unidentified inmate

possessed a shampoo bottle containing an unknown substance, or that the inmate planned to

attack Plaintiff with it.  Accordingly, Plaintiff fails to plausibly state a failure to protect claim.

b.  Deliberate Indifference to Medical Needs

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of

prisoners.'"  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Such medical needs include "psychiatric

or mental health care."  *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir. 1989).  To state a

deliberate indifference to medical needs claim, Plaintiff must plausibly allege (1) "that he

suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with

deliberate indifference."  *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8

(S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must

be sufficiently serious."  *Spavone*, 719 F.3d at 138 (quotation marks omitted).  In other words,

"the inmate must show that the conditions, either alone or in combination, pose an unreasonable

risk of serious damage to his health."  *Walker*, 717 F.3d at 125.  Analyzing this objective

requirement involves two inquiries: "whether the prisoner was actually deprived of adequate

medical care," *Salahuddin*, 467 F.3d at 279, and "whether the inadequacy in medical care is

sufficiently serious," which in turn "requires the [C]ourt to examine how the offending conduct

is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner,"

*id.* at 280.  "There is no settled, precise metric to guide a court in its estimation of the seriousness

of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to

consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or

patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138.  This means that Defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro,* 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (quotation marks omitted)).  In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* (citation omitted).  A defendant's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.  However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quotation marks omitted).  Neither does "mere disagreement over the proper treatment . . . create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

Plaintiff fails to meet both prongs of the Eighth Amendment deliberate medical indifference claim.  As to the first prong, the alleged rash does not rise to the level of "an unreasonable risk of serious damage to [Plaintiff's] health."  *Walker*, 717 F.3d at 125.  Minor injuries, such as a rash, have consistently been held to fall below the objective level of harm required to maintain such a claim.  *See Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) ("[A] persistent skin rash or infection does not constitute a 'sufficiently serious' medical need."); *Purdie v. City of New York*, No. 10-CV-5802, 2011 WL 1044133, at *3 (E.D.N.Y. Mar. 15, 2011) ("A skin rash is generally insufficient to meet the objective requirement of a sufficiently grave and serious condition giving rise to a deliberate indifference [to serious medical needs] claim."); *Swindell v. Supple*, No. 02-CV-3182, 2005 WL 267725, at *7 (S.D.N.Y. Feb. 3, 2005) (holding that a "skin condition . . . producing excessive itching, scratching, soreness from scratching, and cracked skin" is not a condition of "such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference [to medical needs] standard"); *Samuels v. Jackson*, No. 97-CV-2420, 1999 WL 92617, at *1, *3 (S.D.N.Y. Feb. 22, 1999) (finding scabies causing open sores, abrasions, and scarring did not constitute serious medical need).

Moreover, "[c]ontrary to [Plaintiff's] conclusory allegations, the [Complaint] shows that he did receive medical attention . . . ."  *Ramirez v. Lewis*, No. 18-CV-3486, 2020 WL 2859105, at *11 (S.D.N.Y. Jan. 24, 2020) (citations omitted), *adopted in relevant part*, 2020 WL 1303454 (S.D.N.Y. Mar. 19, 2020).  Plaintiff alleged that Defendants promptly asked Plaintiff if he wanted to seek medical care after the unidentified inmate was secured.  (Compl. 4. ("After securing [the unidentified inmate,] [Plaintiff] was asked if [he] wanted medical attention at that time.").)  Plaintiff refused the offer to seek medical care, stating that he "merely wished to re-

16

shower to wash the substance away." (*Id.*)  Plaintiff then alleges that he did in fact seek medical

care the next day, at which time he was given Benadryl and Cortisone cream "to ease the side

effects of a rash [he] had developed on [his] left arm and right facial area . . . ."  (*Id.*)  These

actions cannot be said to constitute medical indifference to Plaintiff's injury.  "Indeed, treatment

of a prisoner's medical condition generally defeats a claim of deliberate indifference."  *Melvin v.*

*County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016)

(quotation marks omitted); *see also Peterson v. Miller*, No. 04-CV-797, 2007 WL 2071743, at

*10 (N.D.N.Y. July 13, 2007) (same).  To the extent that Plaintiff alleges that he received

inadequate testing "to see if [he] contracted any [diseases]," (Compl. 5), the Court "will not

second guess" "the choice of a certain course of treatment," *Johnson v. Wright*, 234 F. Supp. 2d

352, 361 (S.D.N.Y. 2002) (quotation marks omitted).  The Court therefore concludes that

Plaintiff fails to state a deliberate indifference claim as to the quality of his rash treatment.

### 4.  *Monell* Claims

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under

color of state law, deprived him of a federal constitutional or statutory right."  *Sykes*, 723 F.3d at

405–06.  However, "Congress did not intend municipalities to be held liable [under § 1983]

unless action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a

municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove:

(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the

constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*,

558 U.S. 933 (2009); *see also Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at

*10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *report and recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Jan. 3, 2011) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), *report and recommendation adopted sub nom.*, *Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").  "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy

cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 36–37 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).  Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation.  There must at least be an affirmative link between[, for

example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

To the extent that Plaintiff attempts to bring a *Monell* claim against Westchester County, the Court construes Plaintiff's claim as alleging that the practice of disregarding the protocol which requires officers to pat frisk inmates to search for weapons or contraband prior to escorting them down the tier in handcuffs was "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware," or a "failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon*, 705 F. Supp. 2d at 276–77.

Under either of these theories, Plaintiff's bare allegation that there was a pattern of all corrections officers disobeying the rules and regulations that Plaintiff points to are "conclusory, and therefore must be disregarded." *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011), *aff'd*, 480 F. App'x. 627 (2d Cir. 2012); *see also id.*

(dismissing conclusory allegations that did not provide sufficient facts to allow the court to infer what city policies or practices led to the alleged deficiency); *Lowery v. City of New York*, No. 10-CV-7284, 2014 WL 2567104, at *6 (S.D.N.Y. June 6, 2014) (dismissing a pro se plaintiff's *Monell* claim for failing to allege either an underlying constitutional violation or sufficient facts beyond "boilerplate, conclusory allegations"); *Moore v. City of New York*, No. 08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (quotation marks omitted)).

"Plaintiff's claim is based on a single incident of [Defendants'] failure to follow protocol, which generally is insufficient to establish a *Monell* claim." *Rennalls*, 2015 WL 5730332, at *9; *see also Stewart v. Schiro,* No. 13-CV-3613, 2015 WL 1854198, at *16 (E.D.N.Y. Apr. 22, 2015*)* (dismissing *Monell* claim where the plaintiff alleged "that he was injured as a result of a single, isolated episode of misconduct by a fellow inmate"); *Fernandez*, 2010 WL 1222017, at *6 ("[The] [p]laintiff appears to allege a single, isolated episode of misconduct by correction officers . . . in failing to adequately provide for his safety and medical needs.  Thus, [the] [p]laintiff's claim for municipal liability must be dismissed.").

In any event, because the Court has determined that Plaintiff has failed to demonstrate an underlying constitutional violation as to Defendants' alleged failure to follow the relevant protocol, Plaintiff's *Monell* claim must fail.  *See Stewart*, 2015 WL 1854198, at *17 (explaining that where "the court ha[s] already determined that [the][p]laintiff failed to demonstrate an underlying constitutional violation . . . . [his] *Monell* claim also necessarily fails"); *cf. Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants'

liability under *Monell* was entirely correct.").  Accordingly, Plaintiff's *Monell* claim is dismissed.

### 5.  State Law Claims

Plaintiff's negligence claim is barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee."  N.Y. Correct. Law § 24(1); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."  *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  Defendants clearly acted within the scope of their employment, as their actions as alleged in the Complaint and Amended Complaint "arose as a result of . . . [D]efendants discharging their duties as correctional officers . . . ."  *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994).  Further, "there is no private right of action under the New York State Constitution where . . . remedies are available under § 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quotation marks omitted).  Thus, any state law

claims Plaintiff attempts to bring are barred.[5, 6]

### III.  Conclusion

For the reasons stated above, the Court grants Defendants' Motion To Dismiss.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice.  If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  The second amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  Failure to properly and timely amend will likely result in dismissal of the claims against Defendant with prejudice.

---

[5] Defendants argue that "Plaintiff has failed to affirmatively plead that he served a notice or claim against the County Defendant, as required when bringing a tort claim against a municipality or against any of its officers, agents[,] or employees."  (Defs.' Mem. 18 (citing *Perez v. County of Nassau*, 294 F. Supp. 2d 386, 391 (E.D.N.Y. 2003)).)  However, because the Court finds that Plaintiff's state law claims are barred under New York Correction Law § 24, the Court need not reach this issue.

[6] Defendants also argue that they are entitled to qualified immunity.  (Defs.' Mem. 16–17.)  The Court will not opine on whether Defendants are entitled to qualified immunity, however, because Plaintiff has not plausibly pled that Defendants violated his constitutional rights.  *See Posr v. City of New York*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom.*, *Posr v. Ueberbacher*, 569 F. App'x. 32 (2d Cir. 2014).

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 29), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:      February 1, 2022
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE